## LOU BROWN V. STATE OF NEBRASKA.

FILED NOVEMBER 17, 1921.   No. 21912.

1. **Criminal Law: WITNESSES: OATH: PRESUMPTION.** Where, upon a trial, an adult witness is sworn in the usual and customary manner of administering oaths in the courts of this state, by the uplifted right hand, it will be presumed, in the absence of an affirmative showing to the contrary, that such witness not only understood the nature and obligation of the oath, but that he regarded it as binding on his conscience. Such presumption is not overcome by the mere fact that the witness understood English imperfectly and gave his testimony through the aid of an interpreter.

2. ———: ———: ———: **WAIVER.** In such case, if it is conceived that the witness does not understand the obligation, he should be interrogated specifically upon that question and an answer elicited; and a failure to so inquire will be deemed a waiver of the objection.

3. **Indictment.** Where a crime may be committed by several methods, the indictment may charge that it was committed by all, provided they are not inconsistent or repugnant to each other.

4. ———: **REPUGNANCY.** An allegation in an information charging that the crime of robbery was committed by force and violence, and by putting in fear, is not repugnant.

ERROR to the district court for Morrill county: ANSON A. WELCH, JUDGE. *Affirmed.*

*R. J. Greene, Richards & Carter* and *Hugh C. Wilson,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *Jackson B. Chase, contra.*

Heard before MORRISSEY, C.J., LETTON, ROSE, DEAN, ALDRICH, DAY and FLANSBURG, JJ.

DAY, J.

Criminal prosecution on a charge of robbery. Accused was convicted, and has brought the record of his trial to this court for review. A number of assignments of error are noted in the brief, but only such need be considered

as were presented upon the oral argument.

It is first urged that there was error in receiving the testimony of the prosecuting witness, Piedad Herrera, the basis of this objection being that the witness was a citizen of Mexico; that he was unfamiliar with the English language; and that the mode of administering the oath to him was not such as to be the most binding on his conscience. The record shows that upon the opening of the trial all the witnesses were sworn together, Piedad Herrera being among the number. The oath was administered by the clerk of the court in the usual manner observed in this state, namely, by the uplifted right hand. When Piedad Herrera was called to the witness-stand to testify, it developed that he was a citizen of the Republic of Mexico; that his knowledge of English was limited to a few words; and it was apparent that he could not give his testimony except through the aid of an interpreter. To test his ability to understand English, and to determine the necessity of calling an interpreter, he was asked several questions by the court, as well as by counsel, to some of which he made no answer at all, and to others replied, "No savie English," and "No talk." He was then. asked by counsel for the defendant, "Do you know what the clerk said to you when you men were standing up here and he asked you to hold up your right hand and swear?" to which he made no answer. An interpreter was then called and duly sworn by the court to truly interpret the questions propounded by counsel into the Mexican language, and the answers of the witness thereto into English, adding thereto, the following: "You will also interpret to the witness the oath to be administered into the Mexican language." The court thereupon repeated the usual form of oath taken by witnesses. Following some questions propounded to the interpreter by counsel touching his qualifications to act as such, the record then recites: "Piedad Herrera was called as a witness on behalf of the plaintiff and being first duly sworn testified as follows." Under this state of the record we are of the

opinion that the objection to the testimony of the witness Piedad Herrera was not well founded. The presumption is always in favor of the regularity of proceedings in court, and where, as in this case, the record recites that the witness was duly sworn, it will be presumed, in the absence of an affirmative showing to the contrary, that he understood he was being sworn as a witness, and that he regarded the form of the oath as binding on his conscience. If the defendant conceived that the witness did not understand that he was being sworn as a witness, or that he did not regard the mode of administering the oath as binding on his conscience, he should have interrogated the witness with respect to these matters. The mere fact that the witness did not answer the questions put to him in English falls far short of an affirmative showing that he did not understand the oath or regard it as binding upon his conscience. No attempt was made to inquire of the witness through the interpreter concerning these matters. Other witnesses of the same nationality as Piedad Herrera were called, and it developed that they regarded an oath taken on the Holy Bible as more binding on their conscience, and as to them the oath was so administered. This, however, does not amount to an affirmative showing that Piedad Herrera considered an oath taken in that manner as most binding on his conscience. In *Pumphrey v. State,* 84 Neb. 637, it was said: "If a litigant conceives that such witness (an adult citizen of the Empire of Japan) does not understand or will not give heed to the oath administered, he may interrogate the witness before he is sworn, or prove his incompetency by other relative evidence. If he fails to do so the relevant testimony of the witness should be received."

It is next urged by defendant that the information is bad because two separate offenses are charged in one and the same count of the information, to wit: Robbery by force and violence; and robbery by putting in fear. The information is in the usual form, and, stripped of its verbosity, charged the defendant with the crime of rob-

bery by taking from the person of Piedad Herrera by force and violence, and by putting him in bodily fear. Section 8594, Rev. St. 1913, defining the offense of robbery, is as follows: "Whoever forcibly, and by violence, or by putting in fear, takes from the person of another any money or personal property, of any value whatever, with intent to rob or steal, shall be deemed guilty of robbery, and upon conviction thereof, shall be imprisoned in the penitentiary not more than fifteen nor less than three years."

This section of the statute does not define two separate felonies, but defines one only, which may be committed by two methods, namely, by force and violence, or by putting in fear. It is a general rule of criminal procedure that, when under a statute an offense may be committed by several methods, the indictment or information may charge that it was committed by any or all such methods as are not inconsistent with, or repugnant to, each other. The averments in the information are not repugnant, but are perfectly consistent with each other, and therefore are not improperly joined. The principle here announced finds support in 2 Wharton, Criminal Procedure (10th ed.) sec. 1221. In *State v. Montgomery*, 109 Mo. 645, the indictment charged, as in this case, that the crime was committed by taking from the prosecuting witness by force and violence, and by putting him in fear. A similar objection was made as is made in this case. It was held: "Where a crime may be committed by several methods, the indictment may charge that it was committed by all, provided they are not inconsistent with, or repugnant to, each other." Besides, section 9050, Rev. St. 1913, provides: "No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected; * * * nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Even if it be conceded that the information was bad for duplicity, there appears no basis to believe

124 NEBRASKA REPORTS. [Vol. 107

German Am. State Bank v. Mutual Benefit, Health & Accident Ass'n.

that such defects "tend to the prejudice of the substantial rights of the defendant upon the merits."

Lastly, it is urged that the court erred in its instructions to the jury. Particular complaint is made against instruction No. 5. This instruction sets out the essential elements necessary to constitute the crime of robbery under the statute. The criticism is made that the instruction does not require the jury to find beyond a reasonable doubt that these essential elements of the crime were committed by the defendant. If this were the only instruction given tending to connect the defendant with the commission of the essential elements of the crime, we think the criticism of the instruction would be well taken. By instruction No. 7, however, the court told the jury: "The burden of proof is upon the state to prove beyond a reasonable doubt by the evidence in this case each and all of the above-mentioned essentials of the crime charged and also that it was committed at the time and place stated in the information upon the said Piedad Herrera by the defendant in the manner charged in said information as hereinbefore stated." It is well established that the instructions should be considered together, and when so considered, if the law is correctly stated, it is sufficient. It seems plain that, taking the two instructions together, the jury could not have been misled in this case.

From an examination of the entire record, we find no error which would justify a reversal of the judgment.

The judgment is

AFFIRMED.